|, PEATROSS, J.
Mayor George Dement and Charles Durda, Director of Personnel of the City of Bossier City (“Defendants”) appeal the district court’s issuance of a writ of mandamus directing them to afford Larry Shar-rah, former superintendent of the Parks and Recreation Department of Bossier City (“Mr.Sharrah”), certain grievance procedures and appeal rights, regarding his termination of employment, pursuant to the Bossier City Charter, Code of Ordinances (the Code) and Management Regulations. For the reasons stated herein, we reverse.

FACTS

In July 1989, Mr. Sharrah was hired as the superintendent of the Parks and Recreation Department of Bossier City. On September 12, 1997, he and 16 other em *67 ployees of the Parks and Recreation Department were arrested by the Bossier City Police. Mr. Sharrah was charged with malfeasance in office and conspiracy to commit public payroll fraud; the other 16 individuals were charged with payroll fraud. On that same day, Mr. Sharrah and the other employees were terminated by letter of the mayor. The 16 employees, other than Mr. Sharrah, were classified employees under the Code, and received notices from the City Personnel Office advising them of the grievance procedure rights and their right to appeal their termination to the Personnel Board.[1] Each of the classified employees was subsequently reinstated. Mr. Sharrah, however, an unclassified employee under the Code[2], did not receive any such notice and was not afforded any grievance or | ^appeal rights. Mr. Sharrah’s requests to participate in the grievance process were denied by Mayor Dement and Mr. Durda on the basis that only classified employees are entitled to such rights. Mr. Sharrah’s request for reinstatement was also denied by Mayor Dement.
On April 14, 1994, Mr. Sharrah filed suit against Defendants seeking a writ of mandamus directing Defendants to afford him grievance and appeal rights. The parties stipulated the following facts:
1. Classified employees of the city are afforded the following protections:
(a) Annual evaluations;
(b) Discipline pursuant to a fixed structure set forth in the management regulations;
(c) Notice of positions in the classified service, for which individuals can apply pursuant to established employment application procedures;
(d) Annual step increases in pay; and
(e) Grievance review.
2. Individuals who have moved from classified service to unclassified service have been historically informed that they are giving up these protections.
3. Since the inception of the City’s Charter no employee who has moved from classified to unclassified service has ever attempted to invoke grievance and/or appeal procedures.
4. The facts (as distinguished from any legal conclusions) contained in Shar-rah’s petition are correct; provided however, that the reference to classified employees in paragraph 7 is intended to refer to Bossier Parks and Recreation classified employees discharged during the year of Sharrah’s discharge.
The district court ruled in favor of Mr. Sharrah and issued the writ of mandamus. Specifically, the district court found that “employees” of Bossier City have the 13right to participate in grievance review procedures, and Mr. Sharrah was entitled to participate because he was an employee of Bossier City.

DISCUSSION

The central issue in this case is whether, under the relevant provisions of the Charter, Code of Ordinances and Management Regulations, unclassified employees are entitled to participate in grievance review procedures following what the employee perceives to be an unwarranted ter *68 mination of employment. After careful review of the relevant statutory provisions, we find that unclassified employees are not so entitled.[3]
As previously stated, there are three sources of law applicable to the issue in the instant case: the City Charter, the Code of Ordinances and the Management Regulations of Bossier City. A close analysis of each of the relevant provisions, and their relation to each other, makes it clear that unclassified employees are not entitled to participate in the grievance review process. We begin our discussion with the Charter, followed by the Code and the Management Regulations.

THE CHARTER

Chapter 4, Mayor, Section 4.06(3) of the Charter provides that the mayor shall “[a]ppoint and suspend or remove for just cause all city employees ... except as otherwise provided by law, this Charter, civil service or other personnel rules adopted pursuant to this Charter.” (Emphasis added.) A subsequent provision of the Charter provides for the appointment of certain positions, including the ^superintendent of the Parks and Recreation Department. Chapter 7, Department of Public Affairs, Section 7.02(a) reads in pertinent part:
The Mayor shall be the head of the Department of Public Affairs. He shall:
a. Nominate for appointment by the council ... a superintendent of parks and recreation ...
Since appointment of his position is “otherwise provided” for by the Charter, Mr. Sharrah does not fall within the group of city employees subject to termination only on a finding of just cause. That same section (Section 7.02(a)) continues:
[and the Mayor shall:]
... appoint and remove such other employees of the department, subject to the provisions of Chapter 12 of this plan of government, whose appointment is not otherwise provided for in this chapter. (Emphasis added.)
Chapter 12, Personnel, of the Charter, to which Section 7.02(a) of Chapter 7 refers, contains the personnel policy and provisions. Section 12.04 of Chapter 12 provides for a Personnel Board to hear appeals from employees regarding employment and promotions, which would include an employee’s appeal from an alleged improper termination. We find that the plain language of Section 7.02(a), however, makes the personnel provisions of Chapter 12 inapplicable to Mr. Sharrah as superintendent of the Parks and Recreation Department. Section 7.02(a) clearly states that only the removal of such “other employees ... whose appointment is not provided for in Chapter 7” is subject to the provisions of Chapter 12. In other words, any official appointed by the mayor, whose appointment is provided for in Chapter 7, like the superintendent of the Parks and Recreation Department, is not subject to the appointment and removal provisions, including the right to participate in the grievance and appeal process, provided for |,4n Chapter 12. Mr. Sharrah, therefore, is not entitled to participate in the grievance and appeal process.
Mr. Sharrah argues that the Charter does not make the distinction between classified and unclassified employees; and, therefore, all employees, regardless of the class of service to which they belong, are *69 entitled to participate in the grievance process provided for in Chapter 12 of the Charter and Chapter 20 of the Code. We disagree. While the Charter does not use the terminology of classified and unclassified service, it is clear that the Charter provides for different treatment, as far as appointment and removal, for different types of employees, those appointed under the express provisions of Chapter 7 and those “other employees” who are not appointed pursuant to Chapter 7. The latter are the only employees to whom the personnel provisions, including the grievance process, apply; Mr. Sharrah is not a member of that group of “other employees.”

THE CODE

The relevant provisions of the Code are found in Chapter 20, Personnel, which was enacted to carry out the personnel administration of Bossier City “as mandated by the City Charter.” Chapter 20, Section 20-l(a). It is important to note at the outset, that Chapter 20 of the Code was enacted pursuant to the personnel provisions of Chapter 12 of the Charter, which we have previously determined to be inapplicable to Mr. Sharrah as an unclassified employee. Any appointment and removal provisions of Chapter 20 of the Code are, therefore, also inapplicable to Mr. Sharrah.
Section 20-2 of Chapter 20 of the Code establishes the distinction between classified and unclassified employees, referring to Section 20-8 for definition of each type of employee. Section 20-8 reads in pertinent part:
a. The classified service shall consist of the following classes of positions, [a Classification Plan follows | ¿which assigns job classes to grade levels which determine compensation]
b. The unclassified service shall consist of the following elective and appointive positions:
(1) All elected officers of the city government;
(2) Positions which, by Charter, require nomination by the mayor and confirmation by the council and all appointments made by the council;.... (Emphasis added.) •
Section 20-13, Grievance and Appeal Procedures, establishes the right of the classified service to participate in the grievance review process:
(a) Any employee in the classified service who feels that he has been discharged or subjected to any administrative or disciplinary action or otherwise aggrieved without just cause may request review of such grievance.
(b) Procedures for such revieius are provided in city management regulations and these procedures shall be afforded all employees so requesting. (Emphasis added.)
There is no provision providing such review to the unclassified service. Mr. Sharrah argues that because the language in Section 20-13(b) of the Code contains the phrase “all employees,” without making a distinction between classified and unclassified, that Mr. Sharrah is included within that group of employees entitled to grievance review. We find this argument to be without merit. We agree with Defendants that the subject matter of “such reviews,” as referenced in subsection (b), must necessarily be the foregoing provision, subsection (a), which expressly provides grievance review procedures to classified employees “so requesting.”

THE MANAGEMENT REGULATIONS

The Management Regulations provide a plethora of protections and benefits for classified employees of Bossier City. The regulations were adopted pursuant to Chapter 20 of the Code and specifically state that should there appear |7to be any conflict between the two, “the City Code takes precedence over [the] regulations.” Mr. Sharrah again asserts that because, there is no distinction made in the language of the regulations between classified and unclassified employees, the protections and benefits provided for in the regula *70 tions should extend to both classes of employees. This argument fails to consider that the regulations were intended to carry out the administrative procedures created in the Code, which clearly makes that distinction and does not afford grievance procedures to unclassified employees. As such, we find that the provisions of the Management Regulations regarding the grievance and review process do not apply to members of the unclassified service.
Looking at the statutory provisions in a different way, beginning with the Management Regulations and working back to the Charter, the propriety of our reasoning is readily apparent. Starting at the bottom of the ladder, we can dispense with the applicability of the Management Regulations because they plainly state that nothing within the regulations is intended to conflict with the Code, and should such conflict arise, the Code takes precedence. The next rung of the ladder, the Code, plainly states in Chapter 20, Section 20-13, that grievance procedures are available to classified employees, with no provision affording the same benefit to unclassified employees. By its own terms, this provision only applies to classified employees. This is confirmed by Section 20-8(b)(2) of the Code which defines an unclassified employee as one who occupies a “position which, by Charter, requires nomination by the mayor and confirmation by the council.” Moving then to the top of the ladder, the Charter itself, in Chapter 7, Section 7.02(a), provides that the mayor shall, as head of the Public Affairs Department, nominate for appointment, with confirmation by council, the superintendent of the Parks and Recreation Department, among other executive [smanagement positions. That section goes on to state that the mayor may appoint and remove such “other employees,” subject to the provisions of Chapter 12 of the Charter, whose appointment is not otherwise provided for in Chapter 7. The plain language of these three sources of law supports our conclusion that Mr. Sharrah is not one of the persons to whom Chapter 12 applies, to whom the Personnel Board can direct any applicable regulation or who is covered by the grievance and appeal procedures established in Chapter 20 of the Code.
It was clearly the intent of Bossier City to create a system of government in which the mayor has the authority, subject to confirmation by the council, to create an executive management team with whom the mayor can work efficiently and effectively, which team is subject to change with changing administrations. We agree with Defendants that the elected officials must possess the necessary authority to select the key level management personnel by whom their policies will be carried out, and have the requisite freedom to change the people who occupy those positions, as the executives determine may be necessary in the public interest. Distinction between classes of employees is fundamental to the effective coordination and continuity of the functioning of executive agencies, as executive positions are changed throughout the election process. Such a system is analogous to the civil service system of the federal government and the structure of the government of the State of Louisiana. As the Charter expressly provides, the superintendent of the Parks and Recreation Department is a member of that executive management team. The statutory provisions were drafted to reach that end, and we find that the Charter and Code unambiguously attain that desired form of government.

CONCLUSION

For the foregoing reasons, the judgment of the district court is reversed and all costs are assessed to Plaintiff.
REVERSED.

. Chapter 20 of the Code of Ordinances distinguishes between two classes of service of employees of the City of Bossier City, i.e., the classified service and unclassified service. Members of the two classes are treated differently in many aspects of their employment by the city. Historically, the unclassified service has been the group of management officials who are appointed by the mayor and City Council which are subject to change with the changing administrations. The classified service, on the other hand, consists of those positions which remain constant to carry out the day-to-day operations of the city and are not subject to change with changing administrations.

. It is undisputed that Mr. Sharrah, as superintendent of the Parks and Recreation Department, was a member of the unclassified service.

. In their first assignment of error, Defendants argue that the writ of mandamus was not a remedy available to Mr. Sharrah in his effort to obtain relief from the district court. A determination of whether there existed a ministerial duty which should have been performed by Mayor Dement or Mr. Durda, one of the basic elements of a mandamus action, requires a determination of whether Mr. Sharrah, as an unclassified employee, was entitled to participate in the grievance process at all. Since we find that he was not so entitled, there was no duty which Mayor Dement or Mr. Durda could have been compelled to perform by way of a writ of mandamus; therefore, we pretermit any discussion on this issue.